Case number 25-1200 from the Southern District of... I'm sorry, from the District of South Dakota, Jason Schmit v. Trimac Transportation. May it please the Court, Counsel, I really appreciate the opportunity today to present my arguments on behalf of my client, Jason Schmit. And just very briefly, if I may, give some fact background. Mr. Schmit drove truck for the majority of his work life over 20 years, and started working for Trimac Transportation in 2017. Unfortunately, in December of 2018, at the young age of 44, my client was diagnosed with Parkinson's disease. He advised his supervisor at the time immediately, and they were able to work out sort of an informal accommodation. And that included that when he wasn't feeling well, he could haul light. And what hauling light meant was a lighter load permitted him to drive on the interstate versus a two-lane road. It was smoother, and it was about an hour faster, which then gets me to the next accommodation, which was that he could be finished by 1 p.m. He did much better in the early morning with his Parkinson's. He also was informally accommodated in that he couldn't climb ladders, which means he couldn't hook his trailer to his truck, and they accommodated that. They also had someone else clean out using hoses his trucks and trailers. And this accommodation worked extremely well for years under two different supervisors. He had great performance evaluations in 2019 and May of 2020. It wasn't until Gene Williams started as his supervisor that things abruptly changed. Instead of your usual greeting with your new employee, he approached my client and said, HR will be calling you about the limited amount of work you can do. And from there, things just went downhill. The shop stopped hooking up his trailers. Mr. Williams was calling him after hours. They had a GPS monitor him. He even got to the point of saying that he was tired of his, quote, crap and was going to get rid of him one way or another. And even during the separation of employment process, there was an email by Mr. Williams saying that, not to worry, they had a strong case against Mr. Schmidt about the limited duties he could perform. Well, on that point, I'm having trouble figuring out how he's qualified given the strong letter to the Social Security Administrator saying it's impossible for me to work as of August 7th, but then saying on August 10th, he's qualified to work. And I know there's doctors' opinions, but that is an extremely strong statement. Yes, and I believe that's what the district court sort of hung its hat on in ruling against my client. And, of course, we're here on a de novo review. And I suggest that summary judgment was inappropriate in that, first of all, the district court's opinion listed several questions of fact, whether Schmidt resigned, whether Trimack had a discriminatory attitude, which was likely, and also whether he was fired due to his disability. But despite these issues of fact, the court, in my opinion, held contrary to the United States Supreme Court opinion in Cleveland and this court's decision and precedent in Feenan. It's a question for the jury as to whether he can explain satisfactorily to the jury the differences between his application for Social Security disability benefits and his claim that he couldn't work under the ADA. This isn't one of those situations where he says, I've got the following symptoms or following illnesses and here's how it affects me. You, Social Security Administration, figure out whether I'm disabled or not. This is a situation which he listed everything and said it's impossible for me to work anymore. And I just don't know how you can, I mean, maybe you can explain it, but that is just, I mean, I'm not sure you've overcome the burden of being able to explain it based on the evidence. Sure, and I understand the concern, Judge. And I would respond in that the United States Supreme Court was very clear that there is a difference, and you can have inconsistent statements between the SSI and between ADA. The differences here with an ADA claim, you're saying you could work at TRIMAC with accommodation, but under SSA, you're saying you can't work based on your age, education, work experience and disability without accommodation. Here, there is a long list of evidence that my client could work with accommodation at TRIMAC until Mr. Williams arrived and not only took that away, but also gave him new duties. It was clear in the Cleveland case that it can be consistent. The plaintiff can do the job with accommodation under the ADA, but could not perform the job without accommodation under the SSA. And the opinion said these are the sorts of inconsistencies tolerated by our legal system. And I'll quote from Cleveland, The result is that an ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job or other jobs without it. And here, the evidence... I want to ask you about the accommodations. And one of the challenges I have in this case is kind of keeping the different causes of action separate because sometimes they bleed over. But I think one of your claims is that there's a failure to accommodate claim. But the accommodations your client was seeking going forward seemed to be accommodations that were unreasonable, right? In other words, there were government regulations that prohibited those. Or never hauling heavy is different for the employer than, you know, usually not hauling heavy. I mean, why aren't those unreasonable accommodations? And which of your causes of action is that relevant to? Because I'm having trouble pinning it to... I think it's on your discrimination claims. But, you know, if he can't do the job, is there still a retaliation claim here or not? There is. And he could do the job and did for years with accommodations. But he asked for new accommodations, right? And I dispute that, Judge. That's what TRIMAC argues. But I think if you look closely at the letter that the disability rights wrote on his behalf and TRIMAC's response, he wasn't asking to only haul light. He was still asking to haul light when he wasn't feeling well. And granted, that was becoming more and more frequent because of the treatment that he was getting. About the post-trip, and I forget exactly, but the TRIMAC comes in and says the government regs don't allow us to do that. Was that a new accommodation request? It was not new. Again, he wanted to continue doing what he had been doing, which he was permitted to do a hammer tap on all of the tires. And under the Kammler case, it's clear that in that case, there was a weight requirement. And they accommodated the employee, didn't insist on lifting X. And then after they terminate him, said, well, you couldn't lift X. And that's what's happening to my client here. They let him for years do a hammer tap, and others were doing a hammer tap. But then once Mr. Williams shows up, now we have to do an inspection physically of all 22 tires, which he knew full well my client couldn't do. Just for the sake of argument, say I disagree with you and I think they were unreasonable new accommodation requests. I know you disagree with that, but do you, can you still win on the wrongful, or their I'm going further than my initial question, but if there were no reasonable accommodations available? Yes. Under retaliation as well as constructive discharge. It was clear that they could accommodate him, and that's under the Garrison case when that employee was entitled to FMLA benefits. And the same is true here. He was qualified. He had FMLA intermittent leave granted from May of 21 to April of 22. His own FP said he could work as a driver with accommodation in August of 21. The company's own physician qualified him in March of 21 for six months. But the reality is, due to the treatment that he was receiving, the retaliation by Mr. Williams, his diagnosis symptoms started to increase. In July of 21, even before separation of employment, he even emailed HR and said, look, I can't take this anymore. It's affecting my health and my symptoms from Parkinson's. And then, of course, once he's fired, he was absolutely defeated. He couldn't take care of his family. And so within weeks, two to three weeks after being fired, he's going to his neurologist and for the first time asking for depression medication. He went to his family practice doc, also complained of depression. Was he fired or did he quit? Well, and that's another question of fact, which even the district court admitted is a question of fact. My client was done with work for the day. He left or took all of his personal items, which was customary because they don't always use the same cabs. He was told that his truck was going to be in the shop and don't come in until we call you to say it's ready. And then having not received a call, he tries to log in. I believe it was Sunday. And he sees that he's locked out of the system. And so that's yet another question of fact for the jury. And if I really could just go back once more to your question, Judge Strauss, in terms of the evidence, and I went through the evidence that to say he's qualified in August of 21 under the ADA, but to be unemployable, he knew this is an extremely rare job. It was locally hauling. I mean, he went over the Wyoming state line, but he was still hauling locally. And to find a job hauling locally that you could be done by 1 p.m. is next to impossible, which is what he found out, because he immediately tried to find a job. And it was, I believe, mid-September when he applied for unemployment benefits. I'm sorry, but something you said a minute ago. What was your fourth claim, at least in my list, your fourth claim? Was it constructive discharge, or did you plead in the alternative wrongful termination? Is that my recollection? It was more, Your Honor, if the court were to decide that he did quit, that he was constructively terminated. But did you plead, you also plead he was fired? Right. What did the district court do with that, the wrongful termination claim? It's my recollection, Judge, that he then hung his hat on not being qualified based on the social security issues and didn't address it. And if I may reserve my time. You may. Thank you.  Good morning. May it please the court?  My name is Brianna Alticutica. And I represent Appalee TRIMAC Transportation, Inc. This court should affirm the lower court's order granting TRIMAC summary judgment motion in its entirety. TRIMAC operates in a sensitive industry regulated by the US Department of Transportation. DOT regulations ensure safety and compliance of commercial truck drivers by setting rules for licensing, driving hours, and conduct. Commercial drivers must have a valid medical certificate, pass drug tests, and complete daily vehicle inspections to meet DOT requirements. These rules exist to keep transportation safe. TRIMAC requires all of its drivers to operate in compliance with DOT regulations and applicable state rules. In this case, TRIMAC's Rapid City Terminal Manager, Gene Williams, TRIMAC's Safety Manager, and Human Resources held Appellant accountable for complying with Department of Transportation rules, state law, and TRIMAC policies. TRIMAC also provided reasonable accommodations to allow Appellant to perform the essential functions of his job. But in August 2021, according to his own sworn statements to the Social Security Administration about his physical limitations and ability to work, Appellant became unable to perform the essential functions of his job with or without reasonable accommodations. I strongly encourage the court, and it sounds like the court already has, to carefully review the functionality report that Appellant submitted to the Social Security Administration in his wife's handwriting because he was unable to complete the form himself due to his condition regarding his physical limitations and his ability to work. Now, you heard opposing counsel say that may well be the inconsistent statement, but he should have had a chance to explain it at a trial, that that should be a minimal requirement. What's your response to that? My response to that is the framework and the rules set out in the Cleveland v. Policy Management Systems Corporation's case is clear that where these two things exist at the same time, where on the one hand, the plaintiff told the Social Security Administration I'm unable to work due to my disabling condition, and on the other hand, the plaintiff is telling a court I was a qualified person able to work with or without reasonable accommodations, that where those two things are inconsistent, to defeat summary judgment, it's the plaintiff's burden to provide an explanation sufficient to warrant a reasonable juror's conclusion that assuming the truth, assuming the truth of the earlier statement, the plaintiff could nonetheless perform the essential functions of his job with or without reasonable accommodations. And in this case, Appellant has not done that. The evidence that Appellant has set forth, the arguments that Appellant has made trying to explain the inconsistencies between what he said to the Social Security Administration in August of 2021 and September of 2021 about his physical limitations and his ability to work are not overcome by his arguments that, for example, in March of 2021, he was approved for intermittent FMLA. I fail to understand the relevance of those two things. It's also not overcome by his evidence that the Department of Transportation doctor hired by TRIMAC approved him for six months in May of 2021 by his own admissions, and I think everyone in the room understands that Parkinson's is a degenerative condition. It does worsen over time. So it's entirely possible that he may have been qualified in May and then was, according to his own statements, no longer qualified in August. So here, for example, and I'll just jump to some of the statements as an example from the functionality report. The Appellant told the Social Security Administration, I am unable to climb, only stand for a limited time, difficulty walking, I have muscle stiffness, decreased coordination, and increased tremors throughout the day. The inability to control my right hand, arm, right leg, and foot make it impossible to work. I am unable to write for documentation. At times, I have hallucinations and delusions due to my medication I take for my Parkinson's disease. This is in the appendix at 662. Again, I encourage the court to review that carefully. It's several pages long, and there's many other examples of statements that the Appellant made about his physical limitations that are inconsistent with the ability to operate a truck. I really think the District Court got it right when he concluded that no reasonable juror could read that sworn statement that Mr. Schmidt made to the Social Security Administration and conclude that he was also qualified to drive a 148,000-pound truck hauling coal back and forth from Rapid City to Gillette. The two things are mutually exclusive. Did your client know about the statements to the Social Security, and does that matter? No, Your Honor, that's information that's been learned in discovery through the course of the litigation. I don't think it matters. I think what matters for purposes of the question for this court, which is whether the summary judgment decision should be affirmed, is whether the lower court relied on the correct rule and applied it correctly, and I think that they did, because we have the rule set out in Cleveland, and of course, in the record on summary judgment, we have the functionality report. I think maybe the counterargument is that he was working with accommodations and got a new supervisor who started eliminating the accommodations. What's your response to that? My response to that is there's no evidence of that in the record. Those are arguments that have been made by counsel and conclusions that have been drawn by the plaintiff in his complaint and his affidavit that was submitted, but there's no evidence beyond speculation about why Mr. Williams did certain things or what may have been motivating him. And... Well, does the plaintiff testify that, you know, I was told that my prior, some or all of my prior ones would be eliminated? Is there any testimony like that? No, the plaintiff testified to the opposite, Your Honor. The plaintiff testified that he acknowledged that the accommodations that appellant's counsel described, the sort of five accommodations that he started receiving in 2019, shortly after his diagnosis, that he received those without issue and they remained in place throughout his employment with TRIMAC. Then Judge Kobus asks Ms. Bogart, my understanding of your argument, that he then came and asked for some additional ones, first being never to haul heavy, and Ms. Bogart denies that, and then also the inspections, and she says, well, he was allowed to just do taps before and now he's being required to go underneath and do more difficult things. What's your response to that? So on one point regarding the request to haul heavy, I just re-read that letter during the argument and the court can take a look at it. It doesn't say exclusively haul light, but it does say I request to haul light. So the company interpreted that as his request was to haul light. And the letter in the record explains why that was an unreasonable accommodation in terms of the business operations of the company, and that it was an essential function of the job. And it doesn't have to be in the job description to be an essential function. The court will look at other factors like what the employee mostly does, right? Regarding the trip inspections requirement, that is in the job description. That is a requirement of the job. And more importantly, it's required by law. But I think the argument is I was allowed to do it in one manner that was easier for me. And then all of a sudden I had to do it in a more difficult manner. And that point to me is the issue of, and I'm an employment lawyer, I see these cases all the time, is the issue of the new manager comes in and starts enforcing the rules, right? Maybe there was an old manager, a prior supervisor who sort of let things slide. And this is a case where Mr. Williams came in. He was a very experienced terminal manager. He had been at Rapid City years prior. He had been at many other locations with TRIMAC. And he knew how things were supposed to be done. And he held employees accountable to that. And what's important here is that he didn't treat anyone differently. He treated Mr. Schmidt the same as everyone else. There was another question. Were there any other drivers who were allowed to only haul light? I don't believe there's evidence in the record of that. I'm not aware. And on the issue of hauling light, I will also point out that although Mr. Schmidt requested the accommodation of being able to haul light, and he explained the reasons for that in his letter through the advocate, the South Dakota Disability Rights Organization, there is evidence in the record, and this is in the appendix at 224-413 and 433-434, that the majority of his shifts leading up to sort of this critical time period, let's say the first week in August of 2021, he was hauling heavy. I think it's about 80%, 79 point something percent of the time, he was hauling heavy. And he said, he acknowledged in an email that he wanted to haul heavy because the drivers are paid based on tonnage. They're paid by how much they're carrying. So he didn't want to haul light initially because that would affect his compensation. He wanted to haul heavy. He said, but sometimes I'm not feeling well enough. Sometimes I can't spend the extra hour that it takes round trip to get off the interstate, stop at the scale and do what's required when I've got that extra tonnage on the truck. So on those days, is it okay if I haul light? And the company said, sure. All we ask is that you let us know. Call us in advance, tell dispatch so that we can make sure you have the appropriate equipment. We're not sending underutilized equipment out and back. We want to maximize efficiency of equipment. And that was the agreement in place. And I don't think there's any dispute about that. What is the relevance of the function report and the statement, I'm going to misquote it here, but I cannot work or impossible for me to work to the retaliation claim and the wrongful termination or constructive discharge claim? I mean, how did the, is that the basis of the district court's grant to summary judgment on those or not? Because when I read the opinion, it's at the end of the opinion, things get a little short and it's a little unclear to me how those cases or how those claims went away. Sure, yeah, I understand the confusion and here's how I parse it. How I understand it is the district court on the disability discrimination claim of which there are two theories of sort of adverse action, failure to accommodate and the termination. The court sort of dismissed the claim at the first element or the second element of whether or not the plaintiff was a qualified individual. And so then sort of considered the next elements moot. And that's correct under Cleveland, they're immaterial to the claim. If the plaintiff can't establish that element, then the other elements are immaterial to the claim. So I think that's how the disability discrimination claim was dismissed. I'm with you there. Okay, and then we have the, and then we- The hostile environment. Hostile work environment. Which is pervasiveness, right? Is clear, yes, okay. So then we get to the retaliation claim. On that claim, the district court sort of looped in the analysis on the discussion of accommodations earlier in the decision. But the conclusion or the holding and reason for the dismissal of that claim was that Mr. Schmidt's new accommodations that he requested on August 5th of 2021, the ones we've been discussing, the trip inspection and the hauling light, were unreasonable as a matter of law. And because those requests were unreasonable- But don't we have a case, and I'm gonna forget it, that suggests that those claims have to be in bad faith? I think that is that there's a Scruggs case and then there's an earlier case, which I won't waste your time with. But is it true as a matter of law that you request an accommodation, in the course of litigation, that the judge decides, no, that wasn't reasonable, and that that necessarily negates your retaliation claim? I mean, couldn't you have a good faith request for an accommodation that the employer comes back and says, can't do it, government regulations apply, and we're firing you? Is that okay under the district court's understanding of the law here? I think under the Scruggs case, the Scruggs v. Pulaski County case, that's the case that seems most on point to me, and I believe that's what the district court was relying on. And I do think the interpretation and application of that case to the facts here is correct. What about the earlier cases? I found in 2010, Kirkburg, and 2003, Heisler. Those folks were, I believe, not disabled, but, or didn't have a disability, but they seem to say good faith. They use that exact language. Yeah, and I did take another close look at the Kirkburg case yesterday, and I think in that case, it was more of a close question about whether the accommodations that were requested were reasonable. But why should that matter? Like, after the fact, a judge decides it's a close call or this wasn't a close call. Why isn't the, you know, there's no indication here that those requests, I don't think, were in bad faith for accommodation, or, you know, it just strikes me odd that, you know, you guessed wrong, and you can be terminated for it here. Well, I'd like to make just two points to respond to your question. The first point is, I think, under the Scruggs case and what happened here is the plaintiff requested an accommodation that was unreasonable as a matter of law. Mr. Schmidt knew that trip inspections were required. He knew this was an essential function of his job. Let me ask you this. I mean, did the district court find he was unqualified for the position or not?  If he's unqualified for the position, can you sustain a wrongful termination case? A wrongful termination case under the common law or under the? Or a retaliation, because both were made here, right? If he's unqualified, does that finding support the district court's summary judgment? It's not argued, I don't think, and I don't think the district, it may be argued, but the district court didn't base it on that finding. But my question is, if you're not qualified for the job and you get fired, what's the harm? Well, I agree. I'm probably asking the wrong lawyer. I think, yeah, I think that is relevant to the court's decision on. I don't find that in the district court's opinion. The court did not address the ultimate adverse action with respect to any of the claims, the disability discrimination claim, the retaliation claim, or the constructive discharge. Like dismissed based on constructive discharge and completely ignored, in my view, the wrongful termination, like the factual dispute about, well, I was actually fired. The wrongful termination claim was waived on appeal. So the only thing remaining on appeal for that count was what was pled in the alternative, which is the constructive discharge component. And on that claim, the court did look at the record and conclude that the plaintiff argued emphatically that he did not quit. And under this particular wrongful constructive discharge claim under South Dakota law, a required element of that is that the employee quit. So I think that's how the court came to that conclusion on that claim. And I see my time has expired. I would ask the court to affirm. Thank you. Ms. Bogart, your rebuttal. Thank you. I think the most important point I should make is that these are all jury questions. And there's enough presented by my client to go to the jury. With respect to the constructive discharge, I looked back at the court's opinion. And yes, it was rather short, but it referenced that it wasn't severe enough. Again, that's a jury decision. Did you waive on appeal the wrongful termination argument? I don't recall waiving that on appeal, Judge. I think the argument has always been that he was wrongfully terminated, but in the alternative, he was, if the jury were to believe that he quit, then he was constructively discharged. And to the extent of it being severe enough, there's plenty of evidence that they weren't just derogatory comments to my client. They were specific to his disability and what he could and couldn't do. And with respect to retaliation, right, the district court held that they were unreasonable requests for accommodation. Therefore, he was not protected. But again, that's a jury question. And we've presented plenty of evidence to show that they are reasonable requests for accommodation because in fact, they were the same requests that he'd been getting informally for years. With respect to the social security disability issue, again, a jury question. In the Phenon case, which of course is Eighth Circuit, the plaintiff was allowed to explain to the jury, why did all that end up in your social security disability application? And here, my client isn't given that chance. And the district court did not even reference the Phenon decision. And in Phenon, the jury agreed with the plaintiff and awarded damages. And again, he was accommodated for years. And I think opposing counsel was asked about whether there was evidence that they refused to accommodate him. Well, there was a letter that said, we will not let you do the hammer tap anymore. If you can't do it, you're gonna be fired. And this is all- On that point, counsel, can you have a retaliation claim? I'm intrigued by Judge Kobus' question. Can you have a retaliation claim on things like this, if in fact, you're not qualified to do the job? Now, I understand you're arguing the exact opposite on qualifications, but I can't figure out how you could possibly have a retaliation claim if you're not qualified. I think then it turns to, he was regarded as not being qualified. And again, yeah, I believe he 100% was and had been and performing the job, but they were certainly then regarding him as being unable to perform the job. But he should be allowed to present that testimony to the jury. And with respect to the pre and post inspections, it doesn't say you have to physically, in the job description, you have to physically check all 22 tires. It just says pre and post inspections. And he was allowed to do a hammer tap for years, and he should have been continued. And we ask that you reverse the district court. Thank you. Very well. Court appreciates your appearance and arguments and briefing. We will consider the case and issue an opinion in due course. Thank you.